UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | Crim. No. 3:05cr207 (JBA) |
| | : | |
| GONCALO RODRIGUES | : | |

## Ruling on Defendant's Motion to Dismiss Indictment [Docs. ## 11-12]

Defendant Goncalo Rodrigues moves to dismiss the indictment [Doc. # 1] against him for illegal reentry by a removed alien previously convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2).  The basis of his motion is his claim that he was denied judicial review of the underlying removal proceedings due to ineffective assistance of counsel during the immigration proceedings.  An evidentiary hearing was held on January 6 and February 15, 2006.  For the reasons that follow, defendant's motion is denied.

## I.  Standard

Title 8 U.S.C. § 1326(d) sets out three requirements for successfully challenging the removal proceeding underlying an indictment for illegal reentry:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that--
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity

1

for judicial review; and

(3) the entry of the order was fundamentally unfair.

In this case, it is undisputed that Rodrigues exhausted his administrative remedies by appealing his deportation order to the Board of Immigration Appeals ("BIA").  See Govt Initial Response to Def. Mot to Dismiss [Doc. # 16] at 4.  The Government also agrees that "if [Rodrigues were] denied the opportunity for appropriate judicial review of the BIA's decision, th[e]n the underlying facts and circumstances of this case would warrant a finding of fundamental unfairness arising therefrom" under the third element.  Id. at 7.

Under the second prong, Rodrigues "must show that his counsel's performance was so ineffective as to have impinged on the fundamental fairness of the hearing in violation of the fifth amendment due process clause."  Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994).  "A reviewing court uses its own judgment to determine whether an attorney's conduct was ineffective."  Id. Further, a defendant must prove "actual prejudice" by making a "prima facie showing that he would have been eligible for the relief [sought] and that he could have made a strong showing in support of his application."  Id.

## II.  Factual and Procedural Background

Rodriguez entered the United States as a Lawful Permanent Resident in 1979, at age four.  He completed grammar school and

part of high school in Connecticut.  Eventually he obtained a high school equivalency diploma.  After dropping out of high school, he worked in an auto body shop.

Defendant testified that he had at least four criminal convictions, which is supported by his criminal history record. See Govt Ex. 16.  Although he was unsure of the exact charge, he testified that as a freshman in high school he was arrested and convicted for bringing a gun to school and selling it.  In 1994, at age 19, he was convicted of larceny in the second degree for stealing cars, and sentenced to four years suspended and three years probation.  Subsequently he pleaded guilty to larceny in the fourth degree for an offense committed while he was on probation, and therefore his probation was terminated.  In 1996, Rodrigues was convicted of first degree reckless endangerment and was sentenced to one year.

An immigration judge ordered Rodrigues removed to Portugal on April 22, 1999 on the basis of having committed second degree larceny, an aggravated felony.  See Order of Immigration Judge, Def. Ex. A.  Rodrigues applied for cancellation and waiver of removal under Section 212(c), which applications also were denied.  See Govt. Exs. 1, 2.  Rodrigues then appealed to the BIA, and his appeal was dismissed in January 1999.  See Reasons for Appeal, 2/2/98, Govt Ex. 3; Order Dismissing Appeal, Def. Mot. to Dismiss Ex. F.  He was thereafter deported to Portugal.

Rodrigues returned to the United States on an unknown date, but testified that he resided here in June 1999, when his daughter was born.  He remained in the country undetected until July 16, 2002, when he was arrested for attempted assault in the first degree for attempting to run over a police officer with a motorcycle.  The case was not concluded until March 21, 2005, when Rodrigues entered an <u>Alford</u> plea to attempted assault on a peace officer.  He was sentenced to 5 years, execution suspended after 1 year, and 3 years probation.  Defendant then was indicted for unlawful reentry on August 24, 2005.

In his immigration hearing and appeal to the BIA, Rodrigues was represented by Attorney Carlos Santos, then an associate at the firm of Fitzpatrick & Mariano in Naugatuck, Connecticut. Both Rodrigues and Santos testified that Rodrigues had a prior relationship with Attorney Fitzpatrick of that firm, who had defended Rodrigues on his criminal charges and represented him in several personal injury cases arising from motor vehicle accidents.  Fitzpatrick also had handled the estate of Rodrigues's mother in 1997.

Santos testified that Attorney Fitzpatrick assigned him in approximately July 1997 to handle Rodrigues' removal proceedings, and that it was the first immigration case he had handled. Santos testified that he had taken some seminars on immigration law, and relied on "a lot of research" initially to determine how

to proceed with the case.  He also consulted with James Swaine, an experienced and highly regarded immigration attorney in New Haven who had offered assistance to Santos after meeting him at an immigration hearing.

Rodrigues now challenges Santos' representation as constitutionally ineffective.  Specifically, he argues that after the BIA dismissed his appeal, Santos should have filed a petition for review before the Second Circuit Court of Appeals, or filed a petition for habeas corpus in the federal district court.  Thus, the reason that Santos did not file either petition on Rodrigues' behalf was explored at the evidentiary hearing on defendant's motion.

During Rodrigues' removal proceedings, immigration law was undergoing significant change.  In 1996 and 1997, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigrant Reform and Immigrant Responsibility Act ("IIRIRA") were enacted, under which discretionary withholding of removal under Section 212(c) of the Immigration and Nationality Act was limited and then entirely repealed and replaced with a statutory prohibition on waivers of deportation for anyone convicted of an aggravated felony.  See 8 U.S.C. § 1229b(a)(3); Edwards v. INS, 393 F.3d 299, 302 (2d Cir. 2004).  The INS interpreted this enactment to apply retroactively to include anyone who had pleaded guilty to an aggravated felony before the

effective date of the statute.  This INS interpretation was the basis for the BIA's dismissal of Rodrigues' appeal in January 1999.  See Def. Mot. to Dismiss, Ex. F.  Thereafter, in INS v. St. Cyr, 533 U.S. 289, 326 (2001), the Supreme Court overruled that interpretation and held "that § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."[1]

In defendant's pre-St. Cyr BIA proceedings, Attorney Santos had challenged the retroactive application of AEDPA to Rodrigues, arguing that Section 212(c) relief should be available because Rodrigues entered his guilty plea to the second degree larceny charge (the basis of his deportation) prior to 1996.  See Reasons for Appeal, Govt Ex. 3.  Santos testified that after the BIA rejected this argument, he did additional research, contacted Attorney Swaine and obtained a model petition for review to use as a sample.[2]  He also contacted the American Civil Liberties Union, Connecticut Civil Liberties Union, and Connecticut Legal Aid to see if they would take Rodrigues' appeal without charge.

---

[1]The Supreme Court affirmed the decision of the Second Circuit in St. Cyr v. INS, 229 F.3d 406 (2d Cir. 2000).

[2]Santos testified that, after consulting with this attorney, he determined that his next step would have been to file a petition for review, which he incorrectly characterized as "an appeal to U.S. District Court."

Santos testified that at that time none of the attorneys he contacted could predict a successful outcome for defendant on appeal of the retroactivity issue.  He stated that "everyone" thought that the retroactive application of AEDPA was unconstitutional, but he remembered that all the decisions at the time were to the contrary, and therefore he did not know "where the law was going."

However, the uncertainty of the law does not appear to have been a deterrent to his filing a further appeal or petition. Instead, a dispute arose concerning attorney fees for further proceedings.  Santos testified that Mr. Swaine's fee to handle a petition for review would be $3500, and none of the other organizations he consulted would take Rodrigues' case pro bono. He stated that, after obtaining this information, he met with Rodrigues to discuss the case.  (Rodrigues was released on a $10,000 cash bond during the pendency of his immigration proceedings.  See Govt Ex. 4.).  Santos informed Rodrigues in February 1999 that the BIA had denied his appeal, and that another attorney would charge $3500 to handle further court proceedings.[3]  Their discussion concerning the actual appeal process was very brief, because Rodrigues became upset about the fee.  Rodrigues believed that he had sufficient funds in an

_____

[3] Santos did not recall that he specifically gave Rodrigues the other attorney's name or recommended that Rodrigues consult with another attorney.

account with Santos' firm, from his mother's estate and/or from the personal injury settlements, to cover the cost of the appeal proceedings.  Santos, who was not familiar with Rodrigues' account or the firm's billings, told Rodrigues to take the issue up with Attorney Fitzpatrick.[4]  From Santos' understanding, Rodrigues and Fitzpatrick then had a "falling out" and neither Santos nor Fitzpatrick spoke with Rodrigues again.

Santos testified that at some point his legal assistant told him that Rodrigues wanted to pick up his file, and an undated note on the file was introduced into evidence asking Santos "What do I send to the new attorney for him?"  Govt. Ex. 5.  Santos testified that he believed Rodrigues picked up a copy of his file, but Santos was never contacted by any new attorney about Rodrigues' immigration matter.

Santos testified that the reason that he did not take any further steps on Rodrigues' behalf was due to the controversy with the firm over fees.  He stated that he would have "done what was necessary" if Rodrigues had instructed him to do so and had funds to pay for it.  Although Santos is not admitted in the Second Circuit, he would have had employed someone from his

---

[4]Santos testified that as of their last meeting, he was personally unaware of the status of Rodrigues' trustee account with the firm, but that at  the present time, the firm's records reveal a zero balance in Rodrigues' account.

firm,[5] or outside counsel, to file a brief and argue the case.
Santos testified that he was aware that Rodrigues was extremely
upset about the prospect of deportation, characterizing him as
"very desperate" and wanting "to stay at all costs."  However, he
had the understanding that Rodrigues was unwilling or unable to
pay for Santos's firm or Attorney Swaine to undertake further
legal representation, and Rodrigues never asked Santos to do
anything more after February 1999.

Rodrigues testified that money "was never a problem."  He
believed that he had plenty of money left in the firm's trustee
account to pay for any further legal services.  However,
Rodrigues was very vague on the details; he could not precisely
recall how much money had been recovered in the auto accident
cases, or whether he had been in three or four accidents.  He
stated that Fitzpatrick took "money off the lawsuits" to
represent him on his various criminal charges, but he did not
know how much.  He said he had not received any bills or
statements, and had no written fee agreement with Fitzpatrick.
Rodrigues remembered that Santos had used $10,000 of the $15,000
to which Rodrigues was entitled from his mother's estate to put
up a cash bond during the immigration proceedings.  He believed
that Santos either had charged him $3500 or discounted $3500 for

---

[5]On cross examination Santos acknowledged that he was unsure
whether any of his partners was admitted in the Second Circuit in
1999.

representing him in the immigration proceedings, but he was unsure.  He believed that he was still owed $5900 by Fitzpatrick.

Rodrigues stated that he had saved most of the money from the auto accident settlements.  While he was out on bond, Rodrigues testified he was working and making $400-$600 per week at an auto body repair shop.  His father also was working and Rodrigues was confident he would have contributed to his son's legal defense.  His sister had money left over from their mother's estate as well.  Therefore, Rodrigues testified, he would not have had difficulty paying legal fees.

On cross examination, the Government introduced a typed in forma pauperis application to the BIA, dated 2/3/98, which Rodrigues acknowledged signing.  Govt Ex. 8.  The application represents that Rodrigues had $0 in every asset category, as well as $0 in every expense category.  Id.  The Government also introduced two letters to the INS dated in 1997, requesting appointment of counsel for an upcoming immigration hearing.  Govt Exs. 9, 10.  Rodrigues testified that the letters were not written in his handwriting, but that the signature at the bottom of each was his.  Defendant introduced Santos' notice of appearance to the BIA, dated 2/3/98, which Santos had signed twice, once on the line for the "person consenting," arguing that this created doubt whether Santos obtained Rodrigues' consent to represent him before the BIA.  See Def. Ex. C.

10

Notwithstanding the dispute over defendant's financial wherewithal at the time of his removal proceedings, it is clear that Santos did file an appeal brief to the BIA on Rodrigues' behalf.  Rodrigues had little independent recollection of the substance of his appeal.  What recollection he did have was imperfect or incomplete.  He first testified that Santos never filed any appeal on his behalf.  After his recollection was refreshed, Rodrigues stated that Santos did file an appeal to the BIA, but he did not remember the basis of the appeal, other than that he had been convicted under an "old law," and that Santos argued that Rodrigues should be permitted to stay in the United States due to his family circumstances.

Rodrigues testified that he told Santos "to do whatever it takes" to obtain permission for him to stay in the country legally.  However, he also testified that Santos told him there was nothing more that he could do, that he "could take it up with another law firm if [he] wanted to but it was a waste of money because the laws were locked and there was nothing more to be done."  Rodrigues stated that Santos told him to surrender to the INS to recover his cash bond.  Rodrigues stated that he did not get a second opinion from another law firm because Santos was working for him and he trusted him.  Rodrigues testified to no other communications with Santos thereafter, and no further clarifications with the firm about the status of his account.

11

Rodrigues disputed the circumstances surrounding his retrieval of his file from Santos' office.  Rodrigues stated that he did not obtain a copy of the file before 2002 or 2003.  He had been in a serious motorcycle accident in 2001, and in the course of  St. Mary's Hospital's collection efforts, its attorney, also an immigration lawyer, told him she could help him; thus he returned to get his file from Santos' office for her.  Rodrigues testified that he did not consult another immigration attorney before voluntarily surrendering for removal in 1999.

## III. Discussion

To meet his burden under 8 U.S.C. § 1326(d)(2), Rodrigues "must show that his counsel's performance was so ineffective as to have impinged on the fundamental fairness of the hearing in violation of the fifth amendment due process clause."  Rabiu, 41 F.3d at 882.  For the reasons below, defendant has failed to make such a showing.

First, Attorney Santos appears to have taken appropriate steps to prepare Rodrigues' case.  Although he had not handled an immigration matter before, he attended seminars, consulted with experienced immigration counsel, and obtained copies of model pleadings and briefs.  He undertook independent legal research.  Most importantly, his BIA appeal brief raised and fully discussed precisely the issue that Rodrigues argues should have been raised on further appeal: the non-retroactive application of AEDPA.

Santos clearly understood and pressed the key issue in Rodrigues' claim for § 212(c) relief.

The Court credits Santos' testimony that the reason he did not undertake further legal representation of Rodrigues was that Rodrigues and Attorney Fitzpatrick had an unresolved dispute over fees, and after the dispute arose, Rodrigues had no further contact with the firm.  Rodrigues' testimony about the state of his financial capacity to fund his legal representation is equivocal.  His testimony that he had money to pay for legal representation was contradicted by his in forma pauperis application to the BIA and his two letters to the INS requesting appointment of counsel.[6]  Although he stated that he had money left in his trust account, he had only an uncertain picture of the accounting.  Most importantly, he did not dispute Santos' testimony that Rodrigues never resolved the fee issue or paid a retainer for further representation, and that he had no further contact with Santos after February 1999.

Given the infirmities in Rodrigues' recall and accuracy, his testimony that Santos told him that the "laws were locked" and there were no further legal steps to be taken in his case lacks persuasiveness.  Santos clearly understood the retroactivity

---

[6]Rodrigues testified that he did not write either of these documents, but he acknowledged signing them, meaning either he signed documents without regard to their falsity, or he actually had no money for attorney fees in 1997-98.  Either possibility undermines his credibility.

issue which eventually prevailed in <u>St. Cyr</u>, as well as its uphill prospects for success in early 1999.  While Rodrigues' testimony that at some point he instructed Santos to take any necessary steps to keep him in the United States is corroborated by Santos' own testimony, Rodrigues' testimony does not support his claim that he instructed Santos to file a petition or an appeal after the BIA's decision was handed down, particularly as he never made any financial arrangements with Santos to fund such a directive.

This is not a case where defendant was erroneously advised that no appeal or avenue for relief was available at all.  <u>Cf. United States v. Lopez</u>, 435 F.3d 90 (2d Cir. 2006) (holding that <u>pro se</u> petitioner was denied opportunity for judicial review because IJ and BIA affirmatively misled him by telling him he was ineligible for relief and failed to inform him of availability of habeas relief under <u>St. Cyr</u>); <u>United States v. Calderon</u>, 391 F.3d 370, 375 (2d Cir. 2004) (holding that petitioner, who was represented by counsel, had been denied an opportunity for judicial review of his deportation order because IJ told him he was ineligible for § 212(c) relief due to AEDPA, and the speed of the deportation process rendered appeal to BIA impracticable).[7]

---

[7]The argument that Santos would have made against the retroactive application of AEDPA would have enabled Rodrigues to apply for Section 212(c) relief, had he prevailed.  Failure to file a Section 212(c) application when directed to do so by a client has been held to be ineffective.  <u>United States v. Perez</u>,

Here, the IJ's decision notes that appeal was reserved, Def. Ex. A, and Santos did appeal to the BIA on Rodrigues' behalf.  After the BIA dismissed the appeal, Santos was prepared to file either a petition for review or for habeas corpus, or to refer Rodrigues to an experienced immigration attorney, had Rodrigues been able or willing to pay the required fee.  Instead, Rodrigues got into a dispute with Fitzpatrick and failed or refused to pursue further proceedings because he believed Fitzpatrick owed him money.  Rather than pursuing additional legal avenues or tapping other financial resources to pay additional attorney fees, Rodrigues voluntarily surrendered for removal.  See Govt Ex. 7 (INS documentation of Rodrigues' removal from JFK airport on 4/22/99).

Based on these facts, the Court cannot find that Santos' performance was so deficient as to have deprived Rodrigues of

---

330 F.3d 97, 102 (2d Cir. 2003) (Counsel's "failure to file the section 212(c) application after stating that he would at the deportation hearing, and without later informing his client otherwise, fell below the level of performance expected of competent counsel."); Rabiu, 41 F.3d at 882 ("In our view, a competent attorney would have filed a motion pursuant to section 212(c) after his or her client requested permission to do so at the deportation hearing."); Feldman v. Gonzales, No. 04-3784, 2005 WL 3113488 (6th Cir. Nov. 21, 2005).  Here, Santos did file a Section 212(c) application on Rodrigues' behalf before the IJ, and did challenge the denial of the application before the BIA, and was prepared to make the same argument in the federal courts.
   Defendant also argues that Santos could be found ineffective for failing to file a Form I-191 for waiver of deportation.  This argument lacks merit because failure to file such a form was not the basis of the IJ's decision; the IJ denied 212(c) relief because he believed Rodrigues was statutorily ineligible.

meaningful assistance of counsel.[8]  The Court thus need not reach the question of prejudice.

**IV.   Conclusion**

Accordingly, defendant's motion to dismiss the indictment [Docs. ## 11-12] is DENIED.

IT IS SO ORDERED.

/s/_____

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 30th day of May, 2006.**

---

[8]In his closing remarks, defense counsel raised a new argument that the motion to dismiss Rodrigues' indictment should be granted because Rodrigues' right to consular notification under the Vienna Convention on Consular Relations, 21 U.S.T. 77 (Apr. 24, 1963), and 8 U.S.C. § 1357(e), was violated at the time he was arrested for Larceny in the Second Degree.  Counsel was given an opportunity to brief legal authority on this argument, but has not filed any authority in support of his argument.

The Court notes that <u>Sanchez-Llamas v. Oregon</u>, 04-10566, a case raising the issue of whether the Vienna Convention confers a right of action by a foreign detainee to enforce the notice provisions, was argued before the Supreme Court on March 29, 2006 and has not yet been decided.  Under Second Circuit authority, even if an individual has a private right of action under the Vienna Convention, quashing an indictment is not the proper remedy for a consular notification violation.  <u>United States v. De La Pava</u>, 268 F.3d 157, 165 (2d Cir. 2001).